NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JANE DOE,<br><br>                              Plaintiff,<br><br>v.<br><br>VALLEY HEALTH SYSTEM, INC. d/b/a THE VALLEY HEALTH HOSPITAL, INC., VALLEY HOME CARE, INC., VALLEY MEDICAL GROUP,<br><br>                              Defendant. | Case No. 23cv185 (EP) (ESK)<br><br>OPINION |

**PADIN, District Judge.**

This matter concerns the non-consensual disclosure of personal health information to third-parties. On behalf of a putative class, Plaintiff Jane Doe moves to remand this matter to state court for lack of subject matter jurisdiction. The Court decides the motion on the papers. *See* Fed. R. Civ. P. 78(b); L.Civ.R.78.1(b). For the reasons set forth below, Plaintiff's motion to remand will be **GRANTED**.

**I.     BACKGROUND**[1]

On December 12, 2022, Plaintiff filed this putative class action in the Superior Court of New Jersey, Bergen County, against Defendant Valley Health System, Inc. d/b/a The Valley Hospital, Inc., Valley Home Care, Inc., and Valley Medical Group ("Valley Health"), alleging that Valley Health disclosed Plaintiff's personal health information to Facebook and other third-parties without Plaintiff's consent. D.E. 1-1 ("Compl.") ¶¶ 1-4.

---

[1] The relevant facts are drawn from the Complaint, the Notice of Removal, and the parties' briefs.

Valley Health is a non-profit corporation that operates a New Jersey hospital and several New Jersey health facilities. *Id.* ¶ 7. Valley Health also operates several interactive websites enabling patients to schedule appointments, search for physicians, pay bills, request medical records, learn about medical issues and treatment options, and join support groups. *Id.* ¶¶ 16-17. Plaintiff's proposed putative class consists of New Jersey citizens who are, or were, Valley Health patients, and who exchanged communications on Valley Health's websites, which were later disclosed to third-parties without the patients' consent. *Id.* ¶ 150.

Valley Health's non-consensual disclosures occurred despite assurances to visitors of its websites that it was committed to protecting their information and that it would not disclose protected health information for marketing purposes without written permission. *Id.* ¶ 2. Valley Health disclosed this information to Facebook and other third-parties "through the deployment of various digital marketing and automatic rerouting tools embedded on its websites that purposefully and intentionally directed patients' personal health information to third[-]parties who exploit that information for advertising purposes." *Id.* ¶ 4.

Relevant here, in 2009, Congress passed the Health Information Technology for Economic and Clinical Health Act ("HITECH Act"), which created the Office of the National Coordinator for Health Information Technology ("ONC") within the U.S. Department of Health and Human Services ("HHS"). *See* 42 U.S.C. § 300jj-11. The ONC was charged, *inter alia*, with "updat[ing] the Federal Health IT Strategic Plan (developed as of June 3, 2008) to include specific objectives, milestones, and metrics," with respect to "[t]he electronic exchange and use of health information and the enterprise integration of such information" and "[s]trategies to enhance the use of health information technology in improving the quality of health care . . . ." 42 U.S.C. § 300jj-11(c)(3)(A).

2

The HITECH Act also created the Meaningful Use Program,[2] with the purpose of accomplishing Congress's goal of "invest[ing] in the infrastructure necessary to allow and promote the electronic exchange and use of health information for each individual in the United States." 42 U.S.C. § 300jj-31.  Under the Meaningful Use Program, eligible healthcare providers, such as Valley Health, may receive financial incentive payments from HHS if the providers demonstrate "meaningful use" of Electronic Health Records ("EHR").  42 C.F.R. § 495.2-495.370.  Healthcare providers voluntarily participating in the program must comply with certain criteria in order to receive incentive payments under the Meaningful Use Program.  D.E. 1 ("Notice of Removal").

The operative Complaint contains seven state law claims, alleging: (1) violations of the New Jersey Wiretap Statute; (2) breach of fiduciary duty of confidentiality; (3) breach of implied contract; (4) unjust enrichment; (5) invasion of privacy; (6) breach of the covenant of good faith and fair dealing; and (7) bailment.  *Id.* ¶¶ 164-284.  The Complaint does not contain any federal law claims.

On January 13, 2023, Valley Health removed this matter to federal court, citing the federal officer removal statute, 28 U.S.C. § 1442(a)(1), and the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(1), as two separate bases for this Court's jurisdiction.  Notice of Removal. Plaintiff now seeks to remand this matter to state court, pursuant to 28 U.S.C. § 1447.  D.E. 31-4 ("Mot.").  Valley Health opposes.  D.E. 32 ("Opp'n").  Plaintiff has replied.  D.E. 40 ("Reply"). The motion is ripe for review.

---

[2] Renamed the Promoting Interoperability Program, in 2018, but still commonly referred to as the Meaningful Use Program.

## II. LEGAL STANDARD

Federal courts are courts of limited jurisdiction, "possess[ing] only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Where subject matter jurisdiction is lacking over a removed matter, that matter must be remanded to state court. 28 U.S.C. § 1447(c); *Costa v. Verizon N.J., Inc.*, 936 F. Supp. 2d 455, 458 (D.N.J. 2013). Removal statutes "are to be strictly construed against removal and all doubts should be resolved in favor of remand." *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990) (citation omitted). Moreover, it is "the party asserting federal jurisdiction in a removal case [who must] bear[] the burden of showing, at all stages of the litigation, that the [matter] is properly before the federal court." *Frederico v. Home Depot*, 507 F.3d 188, 193 (3d Cir. 2007).

## III. DISCUSSION

### A. Jurisdiction Pursuant to the Federal Officer Removal Statute is Improper

Valley Health's first basis for the Court to assert jurisdiction is the federal officer removal statute, 28 U.S.C. § 1442(a)(1), which confers jurisdiction to federal courts over matters against the "United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office." Significantly, "[i]t is well established that this language is to be liberally construed in favor of the federal forum." *Cessna v. REA Energy Coop., Inc.*, 753 F. App'x 124, 127 (3d Cir. 2018) (citing *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 147 (2007); *In re Commonwealth's Motion to Appoint Counsel Against or Directed to Def. Ass'n of Phila.*, 790 F.3d 457, 466-67 (3d Cir. 2015)).

For this Court to exercise jurisdiction pursuant to Section 1442(a)(1), it must be satisfied that Valley Health has met the following requirements:

4

> (1) [Valley Health] is a "person" within the meaning of the statute; (2) [Plaintiff's] claims are based upon [Valley Health's] conduct "acting under" the United States, its agencies, or its officers; (3) [Plaintiff's] claims against [Valley Health] are "for, or relating to" an act under color of federal office; and (4) [Valley Health] raises a colorable federal defense to [Plaintiff's] claim.

*Papp v. Fore-Kast Sales Co., Inc.*, 842 F.3d 805, 812 (3d Cir. 2016) (citation omitted).

The parties dispute the last three requirements.³ Ultimately, the Court concludes that Valley Health has not established a proper basis for the Court to exercise jurisdiction based on the federal officer removal statute because the "acting under" requirement is not met.

History sheds light on the purpose behind the federal officer removal statute. The original statute, enacted near the end of the War of 1812, was "'[o]bviously an attempt to protect federal officers from interference by hostile state courts.'" *Watson*, 551 U.S. at 147 (quoting *Willingham v. Morgan*, 395 U.S. 402, 406-07 (1969)). The statute took a few other forms before reaching its current form in 1948. However, the statute's "'basic purpose' today is, as it has always been, to 'protect the Federal government from the interference with its operations that would ensue were a State able, for example, to arrest and bring to trial in a State court for an alleged offense against the law of the State, officers and agents of the Federal Government acting within the scope of their authority.'" *Mohr v. Trs. of the Univ. of Pa.*, 2023 U.S. Dist. LEXIS 69766, at *7 (E.D. Pa. Apr. 20, 2023) (quoting *Watson*, 551 U.S. at 150); *see also Golden v. N.J. Inst. of Tech.*, 934 F.3d 302, 309 (3d Cir. 2019) (quoting *Papp*, 842 F.3d at 811) ("The 'central aim' of the federal officer removal statute 'is to protect officers of the federal government from interference by litigation in state court while those officers are trying to carry out their duties.'")). Valley Health falls outside of this "basic purpose," as permitting this matter to lie in state court against a private entity, like

---

³ The first requirement is not disputed. *See* Mot. At 17 n.19 ("Plaintiff does not challenge that Valley Health is a 'person.'").

Valley Health, is not the functional equivalent of permitting interference by a hostile state court with the federal government's operations.

However, removal under the federal officer removal statute may still be proper where a private entity meets the "acting under" requirement. "'[A]cting under' must involve an effort to *assist*, or to help *carry out*, the duties or tasks of [a] federal superior." *In re Commonwealth's Motion*, 790 F.3d at 468 (emphasis in original) (quoting *Watson*, 551 U.S. at 152). And while it is true that the "acting under" requirement, like the federal officer removal statute generally, is to be liberally construed, it is not so expansive as to encompass "mere compliance with a regulatory scheme[.]" *Cessna*, 753 F. App'x at 127 (citing *Watson*, 551 U.S. at 153). Rather, the bar for "assisting" or "helping carry out" cannot be so low that "taxpayers who submit federal tax forms, airline passengers who obey federal smoking prohibitions, or well-behaved federal prisoners," who all "in a sense, help or assist the federal government," would meet the "acting under" requirement. *Mohr*, 2023 U.S. Dist. LEXIS 69766, at *5-6 (explaining that while compliance with the law, in a sense, assists or helps the federal government, more is required to fall within the "acting under" requirement of the federal officer removal statute).

Valley Health makes three arguments to demonstrate that it was "assisting" the federal government to such a degree that the "acting under" requirement is met. None are persuasive.

First, Valley Health argues that its compliance with the Meaningful Use Program in exchange for payments from the federal government exemplifies the type of relationship that satisfies the "acting under" requirement. Opp'n at 12-13. But, at bottom, Valley Health's relationship with the federal government is one borne out of "a private entity that voluntarily elects to engage in a federal incentive program for financial gain." *Mohr*, 2023 U.S. Dist. LEXIS 69766, at *14; *Doe v. Capital Health Sys., Inc.*, 2023 U.S. Dist. LEXIS 167393, at *13-14 (D.N.J. Sept.

19, 2023) (rejecting the same argument Valley Health makes here, and noting that "a stand-alone incentive payment is tantamount to a reward, which in this Court's view is just an encouragement to perform; it falls short of a contractual obligation between [the d]efendant [and the federal government] to satisfy the 'acting under' a federal officer"); *Colleton v. UMass Mem'l Health Care, Inc.*, 2023 U.S. Dist. LEXIS 120379, at *11-12 (D. Mass. July 13, 2023) (quoting *Doe v. Cape Cod Healthcare, Inc.*, No. 23-cv-10080, D.E. 10 (D. Mass. Jan. 25, 2023) ("[T]he fact that the federal government provides incentive payments to [the d]efendant for its participation in the [Meaningful Use] Program does not create a contractor[4] relationship in and of itself. If that were the case, 'the federal officer removal statute would sweep into the federal courts' countless cases involving private entities' receipt of incentive payments or incorporation of practices 'consistent with a policy promoted by the federal government as socially desirable.'")). Thus, Valley Health's relationship with the federal government is not the type of special relationship sufficient to satisfy the "acting under" requirement.

      Second, Valley Health contends that the federal government's provision of a "specific framework and guidelines for providers to follow[,]" "monitored compliance [over] the [Meaningful Use Program,]" and prescribed "model for providers" demonstrates the type of close direction by the federal government that satisfies the "acting under" requirement. Opp'n at 17-19. But there is no legitimate basis to find that Valley Health's voluntary participation and adherence to the federal government's guidelines for the Meaningful Use Program rises beyond anything other than compliance. In fact, "[e]ven a [private entity] subject to detailed regulations and whose 'activities are highly supervised and monitored' is not 'acting under' a federal officer." *Estate of Maglioli v. Alliance HC Holdings LLC*, 16 F.4th 393, 404 (3d Cir. 2021) (quoting *Watson*, 551

---

[4] The classic relationship that satisfies the "acting under" requirement. *See Papp*, 842 F.3d at 812.

U.S. at 153); *see also Graves v. 3M Co.*, 17 F.4th 764, 770 (8th Cir. 2021) ("Government advice and assistance, like the regulatory rules and requirements at issue in *Watson*, do not establish the 'acting under' relationship that [Section] 1442(a)(1) requires."); *Cape Cod Healthcare, Inc.*, No. 23-cv-10080, D.E. 10 (finding that a healthcare provider's "voluntary and unilateral adoption of a practice that may be consistent in some respects with a nonbinding federal policy [the Meaningful Use Program]" does not satisfy the "acting under" requirement). Thus, Valley Health's participation in the Meaningful Use Program cannot be said to be more than exactly what it is: voluntary participation in a federal government program.[5]

Finally, Valley Health asserts that it is assisting to fulfill a government duty or task because were it not for private entities, like Valley Health, the federal government would be left to build the EHR system itself. Opp'n at 20. While true that Valley Health's participation in the Meaningful Use Program promotes the broad federal goal of implementing a federal health IT strategic plan, it "does not produce a product that the government needs, nor is it otherwise fulfilling a basic government task . . . ." *Colleton*, 2023 U.S. Dist. LEXIS 120379, at *12; *Doe v. Hoag Mem'l Presbyterian Hosp.*, 2023 U.S. Dist. LEXIS 77443, at *7-8 (C.D. Cal. May 3, 2023) (same); *Crouch v. Saint Agnes Med. Ctr.*, 2023 U.S. Dist. LEXIS 68801, at *12-14 (E.D. Cal. Apr. 19, 2023) (same). Specifically, "[t]he federal government does not have an obligation to create a health information infrastructure and, if hospital systems like [Valley Health] chose not to maintain [online] patient portals, . . . the government would not be required to create its own." *Id.* at *12-13 (citing *Watson*, 551 U.S. at 154; *Doe v. BJC Health Sys.*, 2023 U.S. Dist. LEXIS 13954, at *11-

---

[5] To equate Valley Health's participation in the Meaningful Use Program as occurring under the "close direction" of the federal government could be likened to concluding that a private individual who voluntarily participates in the federal government's clean vehicle initiative and adheres to the conditions of the initiative in exchange for a tax credit is also doing so under the "close direction" of the federal government.

12 (E.D. Mo. Jan. 10, 2023)); *see also Capital Health Sys., Inc.*, 2023 U.S. Dist. LEXIS 167393, at *14 (concluding that "[g]iven that EHR under the [Meaningful Use Program] is outside of a traditional task usually handled by the federal government, this is not a customary government duty that establishes" the type of relationship between the federal government and the defendant that would constitute "acting under" a federal officer). Therefore, Valley Health was not assisting to fulfill a traditional government duty or task that would satisfy the "acting under" requirement.

Accordingly, because the Court concludes that Valley Health has not met the "acting under" requirement necessary to invoke the Court's jurisdiction pursuant to the federal officer removal statute, removal on this basis is improper.[6] [7]

### B. Jurisdiction Pursuant to CAFA is Improper

Valley Health's second basis for the Court to assert jurisdiction is CAFA, 28 U.S.C. § 1332(d)(1), which provides federal courts with jurisdiction "over civil class actions if the 'matter in controversy exceeds the sum or value of $5,000,000,' the aggregate number of proposed class members is 100 or more, and any class member is a citizen of a state different from any defendant." *Vodenichar v. Halcon Energy Pros. Inc.*, 733 F.3d 497, 503 (3d Cir. 2013) (quoting 28 U.S.C. §§ 1332(d)(2), (d)(2)(A), (d)(5)). The party seeking removal under CAFA bears the burden of demonstrating federal jurisdiction is proper. *Kaufman v. Allstate N.J. Ins. Co.*, 561 F.3d 144, 151 (3d Cir. 2009) (citation omitted). The parties dispute only the minimal diversity of citizenship

---

[6] Because Valley Health cannot satisfy the "acting under" requirement, the Court need not reach the parties' remaining disputes arising under the federal officer removal statute.

[7] In reaching this conclusion, the Court joins the majority of its sister courts. *See, e.g.*, *Capital Health Sys., Inc.*, 2023 U.S. Dist. LEXIS 167393; *Mohr*, 2023 U.S. Dist. LEXIS 69766. Only two courts out of the many that have considered this issue have reached a different conclusion. *See generally Doe v. UPMC*, 2020 U.S. Dist. LEXIS 136077 (W.D. Pa. July 31, 2020); *Doe v. ProMedica Health Sys., Inc.*, 2020 U.S. Dist. LEXIS 244916 (N.D. Ohio Oct. 30, 2020).

requirement under CAFA. The Court concludes that this requirement is not met as both Valley Health and Plaintiff's proposed putative class are New Jersey citizens.

Plaintiff's proposed putative class consists only of:

> During the fullest period allowed by law, all New Jersey citizens who are, or were, patients of [Valley Health] . . . who exchanged communications at [Valley Health's] websites . . . that caused disclosures of patient personally identifiable information and communications to third parties, including (not limited to) Facebook.

Compl. ¶ 150.

Valley Health attempts to expand this proposed putative class beyond New Jersey citizens by arguing that the class includes former New Jersey citizens because the language, "[d]uring the fullest period allowed by law," acts as a temporal modifier. Opp'n at 31-32. According to Valley Health, the nearest-reasonable-referent canon and the fact that Plaintiff did not explicitly provide that the class included only "current" New Jersey citizens support its position.

However, as a sister court rejecting nearly identical arguments persuasively explained:

> First, SSM appeals to the nearest-reasonable-referent canon, which advises that "[w]hen the syntax involves something other than a parallel series of nouns or verbs, a prepositive or postpositive modifier normally applies only to the nearest reasonable referent." According to SSM, the phrase "all Missouri citizens" is the nearest reasonable language that the durational clause could modify . . . . However, SSM does not convince the Court that "all Missouri citizens" is the nearest reasonable referent of the durational clause. According to SSM's preferred interpretation, the Court should reconstruct Doe's class definition to mean "all Missouri citizens, during the fullest period allowed by law, who are, or were, victims of SSM's alleged unlawful disclosures." However, the meaning of this reconstructed class definition remains obscure. A durational clause says when something happened, but SSM argues that the durational clause applies to the phrase "all Missouri citizens." To make this language clear, SSM needs to further reconstruct the class definition to say, "any individual who was a Missouri citizen during

10

> the fullest period allowed by law," turning the grammatical subject "all Missouri citizens" into the verb phrase "was a Missouri citizen" and inserting "any individual" as the new grammatical subject. Given how much revision SSM's interpretation requires, its use of the nearest-reasonable-referent canon lacks sound footing. However, if the Court interprets the durational clause as stating when the interactions between SSM and the class members occurred, the meaning of the class definition becomes clear without the need for dramatic rewriting. So, SSM fails to convince the Court that "all Missouri citizens" is a reasonable referent for the durational clause.

*Doe v. SSM Health Care Corp.*, 2023 U.S. Dist. LEXIS 157927, at *24-25 (E.D. Mo. Aug. 22, 2023) (citations omitted). For the same reasons, the nearest-reasonable-referent canon does not counsel reading former New Jersey citizens into the proposed putative class here.

Additionally, as noted in *SSM Health Care Corp.*, other canons of interpretation also counsel against Valley Health's reading. *Id.* at *25. "The ordinary-meaning canon says that '[w]ords are to be understood in their ordinary everyday meanings—unless the context indicates that they bear a technical issue.'" *Id.* at *25-26 (quoting Antonin Scalia & Brian A. Garner, *Reading Law: The Interpretation of Legal Texts* 152, 69 (2012)). "The ordinary meaning of 'all [New Jersey] citizens' exclude all non-[New Jersey] citizens, including all former [New Jersey] citizens." *Id.* at *26. Applied here, the ordinary meaning of Plaintiff's proposed putative class includes only New Jersey citizens, to the exclusion of all non-New Jersey citizens.

Moreover, the whole-text canon counsels that Plaintiff's Complaint be interpreted as a whole. *Id.* (citing Scalia & Garner, *supra*, at 167). Beyond Plaintiff's definition of the proposed putative class, the Complaint makes clear that Plaintiff intends to act as the class representative for New Jersey citizens. For example, the Complaint provides, "[o]n behalf of herself and all similarly situated citizens in the state of New Jersey," Compl. ¶ 6, and "[w]hile the exact number of Class Members is unknown to Plaintiff at this time, based on information and belief, consists of

11

thousands of people dispersed throughout the State of New Jersey," *id.* ¶ 154. This language leads to the conclusion that the proposed putative class is limited to New Jersey citizens.[8]

Finally, Valley Health asserts that Plaintiff's failure to explicitly limit the putative proposed class to "current" New Jersey citizens means that former New Jersey citizens are included. Opp'n at 34-36. Like the defendant in *SSM Health Care Corp.*, 2023 U.S. Dist. LEXIS 157927, at *29, Valley Health cites to *Anderson v. Davis Wright Tremaine LLP*, 2021 U.S. Dist. LEXIS 254157, at *1 (D. Or. July 14, 2021) (magistrate), *aff'd* 2022 U.S. Dist. LEXIS 33309, at *3 (D. Or. Feb. 23, 2022), for support. In *Doe v. SSM Health Care Corp.*, the court concluded that the ordinary meaning of "all Missouri citizens" in the proposed putative class overshadowed the non-binding precedent set in *Anderson*. 2022 U.S. Dist. LEXIS 157927, at *29-30. This Court also declines to follow *Anderson*, opting instead to adhere to the canons of interpretation discussed above and concluding that Plaintiff's proposed putative class excludes all non-New Jersey citizens.

Accordingly, because the parties are not minimally diverse, removal of this matter pursuant to CAFA is improper.

---

[8] In *SSM Health Care Corp.*, the court also considered the presumption-against-ineffectiveness canon, which counsels that "[a] textually permissible interpretation that furthers rather than obstructs the document's purpose should be favored." 2023 U.S. Dist. LEXIS 157927, at *26-27 (quoting Scalia & Garner, *supra*, at 63). The court concluded that this canon also counseled against the defendant's broader interpretation of the proposed class because it "would frustrate the manifest purpose of the class definition: [the plaintiff] filed in Missouri court, intending to prosecute his claim under Missouri's jurisdiction." *Id.* at *27 (citation omitted). The court's conclusion also applies here.

IV.   CONCLUSION

For the reasons set forth above, neither the federal officer removal statute nor CAFA provides a proper basis for the Court to exercise subject matter jurisdiction over this matter. Accordingly, Plaintiff's motion to remand will be **GRANTED**.  An appropriate Order will follow.

Dated: October 24, 2023

_____
Evelyn Padin, U.S.D.J.

13